OPINION
{¶ 1} Donald Eugene Powell appeals from a judgment of the Montgomery County Court of Common Pleas, which classified him as a sexual predator pursuant to R.C. 2950.01(E). In 1986, Powell was convicted of numerous counts of rape, kidnapping, gross sexual imposition, and attempted rape. In November 2000, the trial court held a sexual predator hearing and classified Powell as a sexual predator. Powell appealed, but his attorney filed a brief pursuant to Anders v. California (1967),386 U.S. 738, 87 S.Ct. 1396, asserting that there were no meritorious issues to present for review. Powell filed pro se briefs to which the state responded. We found that two of the issues presented in the pro se briefs had arguable merit and appointed new appellate counsel. Powell now raises two assignments of error on appeal.
 {¶ 2} "I. The Trial Court's Designation Of Appellant As A Sexual Predator Is Contrary To The Weight And Legal Sufficiency Of The Evidence."
 {¶ 3} Powell claims that the trial court's determination was against the manifest weight of the evidence because all factors weighed against finding him to be a sexual predator except for uncertainty about his ability to avoid a substance abuse relapse. He claims the trial court improperly put the burden of proof on him to prove that he is not a sexual predator, and he also claims that the trial court improperly put the burden of proof on him to show that he could avoid a relapse.
 {¶ 4} R.C. 2950.09(B)(2) directs the trial court to consider numerous factors in determining whether a defendant who has been convicted of a sexually oriented offense should be designated as a sexual predator. These factors include, but are not limited to, the defendant's age and prior criminal record, the number of victims, the age of the victim, the nature of the sexual activity, the use of cruelty, and any other factors that contributed to the offender's conduct.
 {¶ 5} The state's evidence established the following facts about the offenses of which Powell was convicted in 1986. Powell and a friend, James Eaton, offered a ride to an acquaintance of Eaton's when they saw her walking down the street. They drove around with the victim for a while, refused to let her out of the car, and threatened her with a baseball bat. Each man performed oral sex and digital penetration on the victim in the backseat of the car, and each tried unsuccessfully to have vaginal intercourse with her. The men then drove the victim to Eaton's house. At the house, they again raped her repeatedly on a couch and in a bedroom, with one man holding her down and touching her while the other performed or attempted to perform vaginal intercourse. During this time, Eaton used two knives to threaten the victim by stabbing them into the walls near her and telling her that he was going to cut her vagina if she cried. After several hours, the victim apparently convinced the men that she would not tell anyone what had happened, and they let her go. The state also presented evidence that Powell and Eaton had committed a similar crime against another woman the same day, but Powell was never charged regarding that victim. Powell was subsequently arrested and convicted of five counts of rape, five counts of gross sexual imposition, one count of kidnapping, and one count of attempted rape.
 {¶ 6} At the sexual predator hearing, the state and Powell presented conflicting evidence about his risk of recidivism. The state relied on the report of forensic psychologist Susan Dyer. Dyer concluded that Powell's substance abuse treatment in prison and his more advanced age were factors that tended to reduce his risk of recidivism. However, she found that he was at a "somewhat higher risk" because of his previous criminal conduct, even though his previous criminal activity had not involved sex offenses. Dyer also believed that the rape of an adult female who was a stranger to him by use of force put Powell in a high risk group. Dyer found it significant that Powell continued to have some substance abuse problems despite treatment and believed that this factor placed him at high risk of recidivism. She also questioned the "success" of Powell's sex offender treatment given that he continued to deny some aspects of the crime for which he was convicted and to place a large amount of responsibility on Eaton.
 {¶ 7} The defense expert, Solomon M. Fulero, viewed the evidence differently. Fulero testified that he had evaluated Powell using the Hare Psychopathy Checklist and that Powell had received a mid-range score on his risk of recidivism using this instrument. Fulero opined that Powell's sex offender and substance abuse treatments had reduced his risk of recidivism, and he disputed Dyer's assertion that rape of an adult female is a high risk factor. Fulero recognized that Powell's prior offenses and use of force were risk factors, but also pointed out that Powell seemed to have a good plan for the future and to recognize his "triggers" of bad behavior. Fulero admitted that his opinions discounted the claim that there had been a second victim on the same day as the offenses at issue herein because Powell had never been convicted of those offenses and had denied that they had occurred.
 {¶ 8} Powell also testified at the hearing. He testified about attending Alcoholics Anonymous, Narcotics Anonymous, and the Magellan Sex Offender Programs while in prison and feeling like he was a different person than he had been when his crime was committed. He also challenged the victim's version of events by claiming that he had only raped her once and that he and Eaton had not used any weapons. Powell claimed that he had acquiesced in the crime because he had been drinking and had been afraid of Eaton. He admitted to several substance abuse infractions while in prison.
 {¶ 9} Based on the evidence presented, the trial court reasonably concluded that Powell should be classified as a sexual predator. The trial court's primary concern was Powell's substance abuse problem, with which he had continued to struggle in prison. Although it commended Powell on the strides he had made with education and treatment programs, the court noted that both experts had identified signicant risk of recidivism if Powell's substance abuse problems were not kept in check. Thus, the court concluded that the state had presented clear and convincing evidence that Powell "may well commit an additional sexual offense in the future." The court encouraged Powell to have the classification reviewed in five years if his substance abuse had been kept under control outside of prison.
 {¶ 10} The trial court did not abuse its discretion in classifying Powell as a sexual predator. It reasonably concluded that Powell's substance abuse had played a significant role in his crime and in his risk of recidivism and that his ability to refrain from substance abuse should be better established before concluding that he was not likely to reoffend.
 {¶ 11} The trial court did not misallocate the burden of proof or err in requiring Powell to demonstrate he could refrain from future substance abuse.
 {¶ 12} The first assignment of error is overruled.
 {¶ 13} "2. The Trial Court Erred In Prohibiting Expert Testimony On The Issue Of Recidivism."
 {¶ 14} Powell claims that Dr. Nancy Steele, the developer on the Magellan Sex Offender program and a psychologist involved in his therapy, should have been allowed to testify about his likelihood of recidivism. Citing a lack of notice to the state, the trial court allowed Steele to testify about the Magellan program and about factors contributing to recidivism in general, but it did not allow her to state an opinion with respect to Powell specifically.
 {¶ 15} The trial court stated, and it is apparent from the transcript, that the discovery process in this case was "more contentious than [in] the normal predator hearing." As a result, the trial court put on a pretrial order to address difficulties with discovery. Although Steele's name appeared on Powell's witness list, the state apparently had no notice that she would be called to testify about Powell's risk of recidivism and had not received a report to that effect, in violation of the court's order. Indeed, Powell's attorney apparently had told the prosecutor that Fulero would be the only expert she would call. The trial court found that the state would be caught at "a disadvantage" if Steele's proposed testimony about Powell's risk of recidivism was allowed. This conclusion was a reasonable one, and the trial court did not abuse its discretion in excluding the testimony at issue.
 {¶ 16} The second assignment of error is overruled.
 {¶ 17} The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.